SECURITIES AND EXCHANGE COMMISSION, Plaintiff,

v.

PRINCETON ECONOMIC INTERNATIONAL LTD., Princeton Global Management Ltd. and Martin A. Armstrong, Defendants.

Commodities Futures Trading Commission, Plaintiff,

v.

Princeton Economic International Ltd., Princeton Global Management Ltd. and Martin A. Armstrong, Defendants.

Nos. 99 Civ. 9667, 99 Civ. 9669.

United States District Court, S.D. New York.

Feb. 16, 2000.

Securities and Exchange Commission, Carmen J. Lawrence, Eric M. Schmidt, Edwin H. Nordlinger, Helene Glotzer, David Rosenfeld, New York, NY, for S.E.C.

Tenzer Greenblatt LLP, Martin P. Unger, Lawrence S. Feld, Lawrence M. Rosenstock, Niral P. Kalaria, New York, NY, for defendant Martin A. Armstrong.

## OPINION AND ORDER

OWEN, District Judge.

The complaint filed by the Securities and Exchange Commission ("SEC") alleges that Martin A. Armstrong, and his companies, Princeton Economic International Ltd. ("PEIL"), Princeton Global Management Ltd. ("PGML"), and numerous subsidiaries and affiliates, violated section 17(a) of the Securities Act of 1933 (the "1933 Act"), 15 U.S.C. § 77g(a), and section 10(b) of the Securities Exchange Act of 1934 (the "1934 Act"), 15 U.S.C. § 78j(b), and Rule 10b–5, 17 C.F.R. § 240.10b–5, by offering and selling fraudulent promissory notes (the "Princeton Notes") in the many millions issued by Cresvale International, Limited (Tokyo) ("Cresvale"), a subsidiary of defendant PEIL, to Japanese institutional investors, and misrepresenting the net asset value to the investors, thereby concealing large and mounting trading losses.

The motion before me is only that of defendant Armstrong, who moves to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) and (6) for lack of subject matter jurisdiction and failure to state a claim upon which relief may be granted. Armstrong contends that the SEC's complaint is insufficient in that: (1) it fails to allege sufficient facts to establish subject matter jurisdiction under section 17(a) of the 1933 Act, and (2) it fails to allege sufficient facts to state a claims for relief under section 17(a) of the 1933 Act and section 10(b) of the 1934 Act, and Rule 10b–5. For the reasons set forth below, Armstrong's motion is denied.

## Rule 12(b)(1): Lack of Subject Matter Jurisdiction

Armstrong's 12(b)(1) motion is based on the contention that the offer and sale of the Princeton Notes was an extraterritorial offering occurring outside the United States involving foreign issuers and foreign investors, and therefore it is not subject to either the 1933 Act or the 1934 Act. Moreover, Armstrong claims, all of the SEC's allegations of fraudulent conduct with the United States occurred well after the offer and sale of the securities.

In considering a 12(b)(1) motion, a court must accept all the facts alleged in the complaint as true. *Brocsonic Co., Ltd. v. M/V "Mathilde Maersk"*, 98 Civ. 7546, 1999 WL 413456, at *2 (S.D.N.Y. June 21, 1999). Where the jurisdictional allegations of the complaint are disputed, "the court

may resolve disputed jurisdictional fact issues by reference to evidence outside the pleadings, such as affidavits." *Filetech S.A. v. France Telecom S.A.*, 157 F.3d 922, 932 (2d Cir.1998) (citation omitted).

■ I must look at two tests to determine when extraterritorial application of the federal securities laws is warranted: the "conduct test" and the "effect test." *See Itoba Ltd. v. Lep Group PLC*, 54 F.3d 118, 121 (2d Cir.1995). Under the conduct test, federal jurisdiction exists if "(1) defendants' activities within the United States are more than 'merely preparatory,' and (2) these activities (or omissions) 'directly caused' the ... losses." *In re Gaming Lottery Securities Litig.*, 58 F.Supp.2d 62, 73 (S.D.N.Y.1999) (citations omitted).

■ Accepting all the facts alleged in the SEC's complaint as true, as I must, I find that Armstrong has engaged in activities within the United States which were more than merely preparatory. The complaint specifically sets forth facts alleging that Armstrong, from his offices in *Princeton, New Jersey*, controlled not only PEIL, PGML, and the Turks and Caicos subsidiaries of PEIL that issued the notes to the Japanese investors, but Cresvale as well, the Japanese brokerage firm that marketed the notes. (Compl.¶¶ 6–9, 12, 14). In addition, the complaint alleges that Armstrong directed the trading in the account at Republic New York Securities Corporation in New York ("Republic"), which held the investors' funds, and that he caused certain net asset value letters ("NAV letters") materially inflating the value of accounts to be prepared by Republic and sent to investors. (Compl.¶¶ 17, 24–30). This sufficiently states conduct which is more than merely preparatory within the United States.

Upon consideration of the facts alleged in the SEC's complaint and relevant affida-vits and declarations, I also find that these activities were a substantial or significant contributing cause to the losses, satisfying the second prong of the conduct test. The complaint alleges that under Armstrong's direction of the Republic accounts, there was a failure to limit the underlying investments to conservative ones. Thus, contrary to representations made to investors, risky investments were made which resulted in significant losses. (Compl.¶¶ 15–17). It further alleges that Armstrong failed to maintain the investor funds in segregated accounts, and commingled the funds to cover losses in the trading accounts. (Compl.¶¶ 20–23). It alleges Armstrong also caused Republic to issue the misleading NAV letters, in some instances, before the investor purchased additional Princeton Notes or rolled over maturing notes.[1] (Compl. ¶¶ 24–30; Rosenfeld Decl. in Supp. of Pl.'s App. for Prelim. Inj. ¶¶ 3–8). Thus, because both elements of the conduct test are met here, I find subject matter jurisdiction. Accordingly, Armstrong's motion to dismiss for lack of subject matter jurisdiction is denied.

*12(b)(6)—Failure to State a Claim*

[6, 7] On a motion to dismiss for failure to state a claim, the Court should dismiss the complaint pursuant to 12(b)(6) only if it appears "beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Northrop v. Hoffman of Simsbury, Inc.*, 134 F.3d 41, 44 (2d Cir.1997) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). The Court must accept as true all the facts alleged in the complaint and draw all reasonable inferences in plaintiff's favor. *Ortiz v. Cornetta*, 867 F.2d 146, 149 (2d Cir.1989).

■ Here, the SEC contends that Armstrong violated section 17(a) of the

---

1. In light of this, and the allegation that other investors were solicited to purchase the Princeton Notes without being informed that fraudulent NAV letters had been sent to previous investors, (Rosenfeld Decl. ¶ 9), Arm-strong's argument that all of the fraudulent activities alleged by the SEC occurred "well-after" the offer and sale of securities is of no merit.

1933 Act and section 10(b) of the 1934 Act and Rule 10b–5. To establish liability under section 17(a), section 10(b), and Rule 10b–5, "a plaintiff is required to prove that in connection with the purchase or sale of a security the defendant, acting with scienter, made a material mispresentation (or a material omission if the defendant had a duty to speak) or used a fraudulent device." *S.E.C. v. First Jersey Securities,* 101 F.3d 1450, 1467 (2d Cir.1996). Scienter, in the context of securities fraud statutes, means intent to defraud, manipulate, deceive, or at least knowing misconduct. *Id.*

The SEC alleges that Armstrong and the entities under his control, having represented that the proceeds of their note sales would be kept in segregated accounts and used to purchase conservative investments, actually lost sums in the many millions in risky currency and commodities trading, and then commingled accounts prior to subsequent transactions to cover this up. (Compl.¶¶ 16, 17, 20–23). It further alleges that Armstrong arranged for the mailing of the fraudulent NAV letters by Republic to investors containing false statements which overstated the net asset value of the accounts. (Compl.¶¶ 24–30).

Accepting the foregoing facts as true, I find that the complaint sufficiently pleads that Armstrong, acting with scienter, made material representations in connection with the sale of securities. These misrepresentations were material, and certainly were in connection with later "sales" as the law has in mind, as their contents would have unquestionably influenced an investor's decision. *First Jersey,* 101 F.3d at 1466. Accordingly, Armstrong's motion to dismiss for failure to state a claim under section 17(a) of the 1933 Act, section 10(b) of the 1934 Act, and Rule 10b–5 is also denied.

So ordered.